Lloyd Sedrick NEWTON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–18209.

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1973.

Rehearing Denied Dec. 20, 1973.

Bay, Hamilton, Renegar & Lees, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Nathan J. Gigger, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Lloyd Sedrick Newton, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Oklahoma, Case No. CRF–72–917, for the offense of Attempted Burglary in the First Degree, After Former Conviction of a Felony. His punishment was fixed at ten (10) years in the Oklahoma State Penitentiary. From said judgment and sentence, a timely appeal has been perfected to this Court.

The evidence adduced at the trial reflects that Doris W. Hutchinson, who resides in Oklahoma City, Oklahoma, arrived at her home about 9:30 or 10:00 on the evening of April 15, 1972. She was in the process of taking a bath when a car entered her driveway with its lights off. Four men similarly dressed approached her house, two at the front door and two at the back door. They began knocking at the door and when she asked who they were all she could hear was mumbling and cursing. The back door glass, two kitchen windows and one window in the front door were broken. Ms. Hutchinson became frightened and began shooting through the back door. Before she started shooting, the man at the back door, after knocking out the window, reached inside through the broken window in an effort to open the locked door. The witness testified that she only saw the shadow of the man, did not identify him to be the defendant, and stated that she did not recognize any voices. She then notified the Oklahoma City Police and, when they arrived, gave them her gun.

The witness further testified that she gave no one permission to enter her home on that particular evening, and that she did not know the defendant although she had

seen him once or twice next door. She was able to identify his pictures.

J. E. Jones, an Oklahoma City Police Officer, then testified that he was called to the Hutchinson home on the evening in question where he found Ms. Hutchinson in her living room. The back screen door lock had been torn loose and the back door window had been broken. There were six small holes in the shade covering the back door window and glass was found on the back porch and some just inside the house.

Approximately thirty to forty-five minutes later, Officer Jones went to University Hospital where other officers had the defendant, who had been wounded by a gunshot in the chest, in custody. Officer Jones then made an in-court identification of the defendant as being the man who was in custody at the hospital. The officer then testified that Ms. Hutchinson had given him a .32-caliber six-shot revolver and that the gun, spent cartridges and three live rounds were sent to the Oklahoma State Crime Bureau Laboratory for analysis.

Officer Jones further testified on cross-examination that Ms. Hutchinson had given him a physical description of a man she saw running from the house after the shots were fired. He was described as being approximately 6 feet 3 inches in height, weighing 230 to 240 pounds and being 22 to 25 years of age. He also identified the gun taken from Ms. Hutchinson.

Dr. Donald Garrett then testified that on the evening in question he treated the defendant for a superficial gunshot wound in the chest. Upon removing the bullet, the doctor marked same with his initials and gave it to the police.

Ray Lambert then testified that he was a firearms examiner for the Oklahoma State Bureau of Investigation and that the lead bullet taken from the defendant's wound was a .32-caliber. Mr. Lambert stated that he had test fired the Hutchinson weapon, but that ballistic tests were inconclusive due to the condition of the bullet taken from the defendant's wound.

Officer R. A. Jones of the Oklahoma City Police Department then testified that on the evening in question he was called to the University Hospital to investigate a shooting report. The defendant, the shooting victim, told the officers that he had passed two people who were arguing, heard two shots, later determined that he had been wounded and had a friend drive him to the hospital. The officer was later advised by other officers that there had been an attempted burglary and that a Negro male, 6 feet 2 inches in height, 200 pounds, and possibly named Lloyd Newton might have been shot. The defendant was further questioned after being advised of his constitutional rights and stated that he was the owner of a white over red 1960 Pontiac. The officer then made an in-court identification of the defendant.

After the State rested and after the defendant's demurrer was overruled, the defendant called Marvin Williams. Mr. Williams testified that he was a friend of the defendant and that around April he had taken the defendant on two or three occasions to see a woman named Doris. The defendant had referred to the home as "my lady's house." Williams described the home as being similar to the Hutchinson home and being located on the same street, but could not provide a positive address.

Georgia Lee Newton then testified that she was the defendant's mother and that she had met the complaining witness one time in the Newton home when Ms. Hutchinson came by to pick up the defendant and take him to her home. Mrs. Newton further testified that she had had several telephone conversations with the complaining witness and that said conversations intimated that the complaining witness and the defendant had more than a casual relationship.

After the defendant rested, the jury returned a verdict of guilty of the crime of

Attempted Burglary in the First Degree. The second stage of the proceeding was then held after which the defendant was found guilty as charged in the Information.

The defendant's first contention urges that the trial court erred in failing to sustain the defendant's demurrer to the evidence. With this contention we cannot agree. The record reflects that Ms. Hutchinson was an eyewitness to an attempted breaking and entering. The defendant argues, however, that the State failed to prove a specific intent to commit a felony inside the Hutchinson home. This Court has held on many occasions that in a burglary case, where breaking and entering is definitely proved, the fact that the defendant had no opportunity to commit a felony inside the building before his apprehension was not controlling on the question of his intent. Cherry v. State, Okl.Cr., 276 P.2d 280. The same general rule of law is applicable when there has been definite proof of an attempted breaking and entering. Whether one intends to commit a crime in a house is determined by the intent of the individual at the time the unlawful entry or attempt is made. Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044. Intent is one of the questions of fact for the determination of the jury, and it is the jury's sole province to weigh the evidence and the facts. Potter v. State, Okl.Cr., 266 P.2d 647.

A complete reading of the record reflects that there was sufficient direct and circumstantial evidence presented by the State to support the allegations set out in the Information and that the trial court did not abuse its discretion in overruling the defendant's demurrer. Therefore, defendant's first proposition in error is without merit.

The defendant next contends that inconsistent statements made by the complaining witness require that the conviction be reversed. Again, we do not agree. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. Gray v. State, Okl.Cr., 467 P.2d 518. Therefore, defendant's second proposition is without merit.

The defendant next urges that the jury was improperly instructed as to the range of punishment. In the instant case, the trial court instructed the jury that attempted burglary in the first degree after former conviction of a felony is punishable by imprisonment for a term of not more than ten (10) years. This is a proper instruction under 21 O.S. § 42 which provides as follows:

"1. If the offense so attempted be punishable by imprisonment in the penitentiary for four years or more, or by imprisonment in a county jail, the person guilty of such attempt is punishable by imprisonment in the penitentiary, or in a county jail, as the case may be, for a term not exceeding one-half the longest term of imprisonment prescribed upon a conviction for the offense so attempted."

A conviction of burglary in the first degree carries a maximum penalty of twenty years in prison.

However, defendant argues that the defendant should have been sentenced under the provisions of 21 O.S. § 51, subsection 3, which provides as follows:

"3. If such subsequent conviction is for petit larceny, or for any attempt to commit an offense which, if committed, would be punishable by imprisonment in the penitentiary, then the person convicted of such subsequent offense is punish-

able by imprisonment in the penitentiary for a term not exceeding five (5) years."

In our recent case of Fulton v. State, Okl. Cr., 491 P.2d 789, this Court, in specifically overruling Epperson v. State, 84 Okl.Cr. 255, 181 P.2d 292, held that it was the intent of the legislature in enacting the "after former conviction" legislation to enhance punishment rather than decrease the same. Therefore, the trial court properly instructed the jury under the general attempt statute and defendant's third proposition in error is without merit.

The defendant next contends that the trial court committed reversible error when the trial judge had a certain discussion with a member of the jury panel outside of the presence of the defendant or his attorney. The record reflects that during a recess and while in chambers the trial judge had the following discussion with a member of the jury, to-wit:

"THE COURT: First, would you tell me what your name is?

"A. Sharon Richardson.

"THE COURT: Go ahead.

"A. When they were naming off the list of witnesses, well, they didn't ring a bell, none of the names but I do know one, I went to high school with him and I haven't seen him since.

"THE COURT: Which witness was that?

"A. It was Mr. Woodie, Officer Woodie.

"THE COURT: Officer Woodie?

"A. Uh-huh.

"THE COURT: Do you think that is going to affect your judgment in this case?

"A. No, I don't think so but I wanted to be fair about it, I wanted to be truthful, I hate to feel like listening to the testimony and everything we are, if I know someone, but, I do feel like it wouldn't affect anything in my judgment or I can still be impartial.

"THE COURT: All right. I appreciate your frankness. I am going to advise both attorneys as to what you told me here. I don't think there will be any objection from either side.

"A. Okay.

"THE COURT: I appreciate your letting me know about it.

"A. Well, if they do dismiss me, will that mess up the trial?

"THE COURT: Well, I don't think it is going to affect it any in view of your statement that you honestly felt that it is not going to affect your judgment?

"A. I honestly feel that.

"THE COURT: I don't think it is going to cause any difficulty.

"A. Okay.

"THE COURT: All right. Thank you very much.

"A. Thank you for seeing me." (Tr. 157–159)

■ It is obvious that the trial judge erred in having any discussion with a member of the jury panel outside the presence of defendant's attorney. However, under the circumstances related above, it is the opinion of this Court that the error was harmless on its face and there is no showing of any prejudice. Therefore, the defendant's fourth proposition in error is without merit.

The defendant's last contention urges that the punishment was excessive as a result of improper argument by the prosecuting attorney. In support of his argument the defendant cites numerous statements made by the prosecuting attorney in closing argument.

■ The record reflects that defense counsel failed to object to any of the. alleged improper statements. In Overstreet v. State, Okl.Cr., 433 P.2d 738, this Court recently held that alleged error in allowing prosecuting attorney to include prejudicial remarks amounting to unfair comment dur-

ing closing argument was not preserved for appeal where no objections were interposed to the argument, no exceptions were taken to the trial court's ruling and no request was made for a mistrial. To fail to raise the issue by proper objection constitutes a waiver of same and the error may not be raised for the first time on appeal.

Defendant's last proposition in error is wholly without merit.

For the reasons heretofore stated, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY and BRETT, JJ., concur.